IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| FENNER INVESTMENTS, LTD., § | |
| § | |
| vs. § | |
| § | CASE NO. 6:11cv348 LED-JDL |
| CELLCO PARTNERSHIP d/b/a § | |
| VERIAON WIRELESS, et al. § | |

**MEMORANDUM OPINION AND ORDER**

This Court previously construed several terms in the instant action (Doc. No. 122). Presently, only one term remains in dispute. The parties have presented briefing on the term "service profile" for the Court's construction (Doc. Nos. 112, 114, 119, 128). For the reasons set forth herein, the Court adopts the construction set forth below.

**BACKGROUND**

Plaintiff Fenner Investments, Ltd. ("Fenner") alleges Verizon Wireless ("VZW") infringes Claim 1 of U.S. Patent No. 5,561,706 ("the '706 patent"). The '706 patent is titled "System for Managing Access by Mobile Users to an Interconnected Communications Network where a Billing Authority is Identified by a Billing Code from the User," and discloses a system for managing a communication network for mobile users. Claim 1 is the only asserted claim and is set forth below:

1. A method of providing access to a mobile user in a communications system having a plurality of interconnected radio frequency communication switches for selectively collecting calls to mobile users via radio frequency links, a plurality of billing authorities for maintaining service pro-files of mobile users and a plurality of location authorities for maintaining current locations of mobile users within the interconnected communication switches, the method comprising:
   receiving at a radio frequency communication switch a
       personal identification number from a mobile user;
   receiving from the mobile user at the communication

1

>>switch a billing code identifying one of the plurality of billing authorities maintaining a service profile for the mobile use[r], wherein different ones of the plurality of billing authorities may maintain the service profile or a second profile for the mobile user identified by the personal identification number;
>requesting a service profile of the mobile user from the
>>billing authority identified by the received billing code;
>storing in memory the service profile received from the
>>billing authority; and
>providing the mobile user access to the switch.

'706 patent at 5: 61–67; 6: 1–14.

The remaining disputed term presented by the parties is "service profile." The parties agreed that no hearing was necessary (Doc. No. 120), and accordingly, the Court resolves this matter on the briefing.

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362

F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., LP*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'") (citations omitted). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## DISCUSSION

### A. Disputed Term

#### I. Service Profile

| Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
| --- | --- | --- |
| "a description of services for which a personal identification number (as construed herein) is authorized" | "a description of services for which a personal identification number (as construed herein) is authorized where the description of services is separate from the authorization" | "a description of services for which a personal identification number (as construed herein) is authorized" |

Fenner argues that the Court should adopt its prior construction of "service profile" from *Fenner Investments, LTD v. Juniper Networks, Inc., et al*, No. 2:05-cv-00005 (E.D. Tex.) (Doc. No. 389) ("JUNIPER") where the Court construed "service profile" to mean "a description of

services for which a personal identification number (as construed herein) is authorized". FENNER OPENING CLAIM CONSTRUCTION BRIEF, at 20 ("FENNER BRIEF") (Doc. No. 112). VZW argues that the Court should clarify the claim scope to resolve a dispute that may arise regarding whether a yes/no response could constitute a description of services. VZW'S RESPONSE BRIEF, at 3 ("RESPONSE"). Specifically, VZW argues that a yes/no response cannot satisfy the claim limitation requiring a "description of services." *Id.* VZW cites to Fenner's expert in the *Juniper* litigation to demonstrate that Fenner is now taking an inconsistent position that should not be allowed. *Id.* at 5. Specifically, VZW argues that Fenner's prior expert report was "consistent with the claim language and intrinsic record," but that Fenner's current litigation position is inconsistent and "defies the plain and ordinary meaning of the Court's claim construction." *Id.* at 3.

VZW raises an alleged claim scope dispute regarding the term "service profile," but that dispute is not sufficiently developed through the intrinsic record in the instant action. Instead of a claim scope dispute tied to the intrinsic record, VZW claims Fenner is taking an inconsistent claim construction position. Yet Fenner is simply requesting the identical construction the Court adopted in the *Juniper* litigation. The Court is not foreclosing the possibility of evaluating prior litigation if an inconsistent litigation position arises in this action through an expert report, testimony, or otherwise. However, as it stands, what has been presented is not a matter of interpreting the intrinsic record, but policing parties' prior litigation positions. In sum, there is not a legitimate claim scope dispute presented at this point that would require the Court to depart from its prior construction. Accordingly, the Court construes "service profile" as "a description of services for which a personal identification number (as construed herein) is authorized."

## CONCLUSION

For the foregoing reasons, the Court adopts the construction set forth above.

**So ORDERED and SIGNED this 31st day of May, 2013.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE